**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rodney Dwayne Lawson,<br><br>    Plaintiff,<br><br>v.<br><br>American Airlines, *et al.*,<br><br>    Defendants. | No. CV-24-00641-PHX-JJT<br><br>**ORDER** |

At issue is Defendants' Motion to Dismiss pursuant to Rules 12(b)(5) and 12(b)(6) (Doc. 13, MTD), to which *pro se* Plaintiff Rodney Lawson filed a Response (Doc. 21, Resp.) and Defendants filed a Reply (Doc. 22, Reply). The Court has reviewed the parties' filings and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

**I.     BACKGROUND**

According to the Complaint, Plaintiff was employed as a flight attendant with American Airlines from November 2011 through April 2023. (Doc. 1, Compl. at 3.) In January 2023, Plaintiff was involved in a "verbal interaction" with an airport gate agent in Phoenix, Arizona. (*Id.* at 4.) Although Plaintiff's Complaint does not explain the context of this altercation, American Airlines' management personnel consequently held an "initial investigation meeting" with Plaintiff. (*Id.*) After this initial meeting, American Airlines management notified Plaintiff of an "in-person[] 'follow-up' investigation meeting," and

advised Plaintiff that union representatives from the Association of Professional Flight Attendants would be available for him. (*Id.*) Plaintiff requested that the meeting be recorded, which American Airlines allegedly denied. (*Id.*) Plaintiff declined to attend this second meeting without personal legal counsel present, which American Airlines also denied. (*Id.*) As a result, Plaintiff's employment with American Airlines was suspended from February 2023 through April 2023. (*Id.* at 5.) Finally, Plaintiff requested a Microsoft Teams meeting with American Airlines' management personnel "in lieu of attending an in-person, second investigation meeting" in March 2023. (*Id.*) American Airlines also denied this request. (*Id.*) Plaintiff was suspended in February 2023 and later terminated in April 2023. (*Id.*)

In the years prior to Plaintiff's termination, Plaintiff raised numerous workplace grievances to American Airlines' management. (*Id.* at 4, 5.) Plaintiff alleges that in January 2023, he emailed American Airlines' management his concerns related to the company's "unlawful abuse of its Diversity, Equity, and Inclusion (DEI) policy within its Inflight department," "discriminatory hiring practices within its Inflight department," and "incompetency, inefficiency and lack of control over its Inflight department personnel." (*Id.* at 5.) Plaintiff claims that he emailed his concerns to American Airlines' management "throughout [Plaintiff's] final years of employment with American Airlines (including 2023)." (*Id.* at 5.) The concerns include accusations that American Airlines abused its DEI policy by "not hiring a fair percentage of 'straight' men in its Inflight department" as compared to U.S. Census data. (*Id.* at 5.) In these emails to management, Plaintiff expressed concerns with American Airlines' practice of "premeditatedly, over-hiring 'gay' men in its Inflight department," highlighting that American Airlines' male flight attendant population "embodied 4% straight men and 96% gay men," an inverse percentage to the U.S. Census data of 96% straight men and 4% gay men. (*Id.* at 5.) Plaintiff also emailed concerns related to the "excessive rudeness and lack of professionalism among flight attendant personnel [and] management personnel" as well as "unlawful, silent, non-action

participation in the federal crimes of its flight attendants' daily, consistent onboard-aircraft liquor thefts." (*Id.* at 6.)

On January 23, 2024, Plaintiff filed a charge of discrimination with the EEOC, stating the following:

> I began working for the above employer in or around November 2011 as a Flight Attendant.
>
> In or around January 2023 I had an argument with a Gate Agent.
>
> In or around January 2023, I attended a meeting to discuss the situation that occurred with the Gate Agent.
>
> In or around January 2023, I opposed being present for a follow up meeting and as a result I was terminated in or around April 2023.
>
> I believe I have been discriminated against because of my sexual orientation, straight and discharged in relation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(MTD. Ex. A.) The EEOC issued Plaintiff a determination of charge and notice of right to sue, informing plaintiff that "the EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute." (Compl. at 8.)

Plaintiff filed the Complaint bringing claims of employment discrimination based on Plaintiff's sex and sexual orientation (straight male) and retaliation under Title VII of the Civil Rights Act. Plaintiff alleges that Defendants retaliatorily terminated Plaintiff's employment, "portray[ing] this unlawful termination as a case of misconduct/refusal to participate in an investigation meeting" with American Airlines' management personnel. (Compl. at 4.) Defendants timely filed a Motion to Dismiss on April 26, 2024.

## II.  LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to

state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**III. ANALYSIS**

    **A. Failure to State a Claim**

Plaintiff brings discrimination and retaliation claims under Title VII, which prohibits employers from retaliating against an employee or discriminating on the basis of an employee's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. To properly bring a Title VII claim in federal court, Plaintiff must first exhaust his

administrative remedies, which requires filing a claim with the EEOC within 300 days of the objectionable conduct. *See* 42 U.S.C. § 2000e-5(e)(1). Claims brought after the statutory timeframe has passed are barred. *Id.*

Plaintiff filed a charge of discrimination with the EEOC on January 23, 2024. (MTD, Ex. A at 1.) Defendants argue that his Complaint is therefore untimely and that, as a result, Plaintiff failed to adequately exhaust his administrative remedies. (MTD at 6.) Looking back 300 days prior to January 23, 2024, any validly raised discriminatory conduct must have happened no earlier than March 29, 2023. Events occurring before that date fall outside the statutory limitations period and are time-barred. Accordingly, any of Plaintiff's claims relating to the January 2023 interaction with the gate agent or the subsequent meeting are foreclosed. Defendants recognize that Plaintiff's termination, occurring in April 2023, is within the statutory period, but assert that Plaintiff's claims still fail because "Plaintiff does not allege his termination was related to his workplace concerns as necessary to state a Title VII claim." (MTD at 7.) This is incorrect; Plaintiff clearly connected his retaliation claims with termination in his Complaint. Although Plaintiff, who proceeded *pro se*, misunderstands the basis of illegality, attributing Defendants' alleged unlawfulness to "misinterpreting, misrepresenting and misapplying its bylaws" (Compl. at 4), he nonetheless plainly states that "American Airlines unlawfully terminated [Plaintiff] April 2023, via RETALIATION." (Compl. at 4.) Further, Plaintiff alleges that his termination was the "unlawful and deceptive response" from Defendants following Plaintiff's emailed complaints to management. (Compl. at 4.)

Thus, events occurring after March 29, 2023—namely, Plaintiff's termination—are not barred by Title VII's statute of limitations. However, Plaintiff's claims must also adequately allege discriminatory and/or retaliatory conduct to prevail. The Court discusses these issues in turn.

**B.     Discrimination**

To establish a *prima facie* case of unlawful discrimination, Plaintiff must show "(1) the plaintiff belongs to a protected class, (2) he was performing according to his employer's

legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Thacker v. GPS Insight, LLC*, No. CV18-0063-PHX-DGC, 2019 WL 3816720, at *2 (D. Ariz. Aug. 14, 2019) (citation and internal quotation marks omitted). Defendants argue that Plaintiff failed to "connect any of his grievances to his gender/sexual orientation" and that Plaintiff's Complaint is comprised of "workplace issues stem[ming] from disagreements he has with American's handling of its own policies, its hiring practices, and his co-workers' conduct." (Resp. at 9.)

      Plaintiff nominally bases this lawsuit upon allegations of discrimination, but most of his claims are actually grounded in retaliation. (Comp. at 1.) The Court will address Plaintiff's discrimination claims before turning to his retaliation claims. Plaintiff asserts he was "unlawfully[] terminated by American Airlines" in April 2023 following Plaintiff's "verbal interaction" with a gate agent in Phoenix and Plaintiff's refusal to participate in a second "investigation meeting." (Compl. at 4.) However, Plaintiff fails to state any facts that connect the alleged discrimination with the gate agent altercation, Defendants' subsequent investigation meetings, or Plaintiffs later termination. Indeed, the only suggestion of discrimination is in Plaintiff's charge of discrimination filed with the EEOC, which Defendants provided in their motion. (MTD, Ex. A. at 1) In the charge, Plaintiff states that he "initiated a complaint expressing [his] dissatisfaction with the recruiting and hiring process," but also asserts that he was terminated "as result of" Plaintiff's "[opposition to] being present for a follow up meeting" after his argument with the gate agent. (MTD., Ex. A at 1.) Moreover, Plaintiff's Complaint fails to mention any discriminatory conduct by Defendants, aside from concerns Plaintiff raised to Defendants regarding its allegedly "premediated[] over-hiring [of] 'gay' men'" in its inflight department, relying on purported U.S. Census data to illustrate the alleged disproportion in Defendants' hiring practices. (Compl. at 5.) In an attempt to illustrate Defendants' discriminatory practices, Plaintiff refers to uncited statistics to show that 96% of males

employed within Defendants' inflight department are gay, compared to the general U.S. male population which Plaintiff contends is 96% straight. (Compl. at 5.) While Plaintiff belongs to a protected class on the basis of sexual orientation, the Complaint lacks any substance linking his termination to sex discrimination beyond mere speculation.

Although Plaintiff aired these concerns to Defendants via email—describing Defendants' alleged abuse of the company diversity, equity, and inclusion policy, discriminatory hiring practices, and incompetency throughout Plaintiff's final years of employment and in January 2023—his Complaint does not sufficiently allege cognizable discriminatory conduct, to whom discrimination was directed, or whether he experienced discrimination by Defendants. (Compl. at 3, 5.) Plaintiff offers no evidence of similarly situated employees treated differently. Further, his Complaint undercuts the second prong required for a *prima facie* discrimination claim by suggesting Plaintiff may not have been performing according to his employer's legitimate expectations when he was involved in an argument with a gate agent or refused to engage in a second investigation meeting with American Airlines' management team. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("[A] plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims."). Taking all Plaintiff's arguments as true, Plaintiff fails to adequately allege that Defendants' hiring trends or workplace practices were a result of discriminatory practices of which he was a victim and is entitled to relief. The Court finds there is simply no basis for discrimination stated in the Complaint.

### C. Retaliation

In addition to Title VII discrimination claims, Plaintiff also alleges unlawful retaliation "with a sexual orientational component." (Compl. at 7.) To survive a motion to dismiss, a *prima facie* retaliation claim must show that "(1) the employee engaged in a protected activity, (2) the employer took an adverse employment action against the employee, and (3) the employer would not have taken the adverse employment action but for a design to retaliate." *Thacker v. GPS Insight, LLC*, No. CV18-0063-PHX, 2019 WL

3816720, at *3 (D. Ariz. Aug. 14, 2019) (citations omitted). An employee engages in protected activity when he complains about conduct that he reasonably believes constitutes an unlawful employment practice under Title VII or participates in an EEOC investigation or proceeding. *Id.*; *see also Ray v. Henderson*, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000) (noting that filing a complaint with the EEOC and informal complaints to a supervisor are both considered a "protected activity"). To survive dismissal, Plaintiff must show a nexus between the protected activity and the adverse employment action. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (holding that no causal link exists for adverse employment action that occurred thirteen months after Plaintiff engaged in protected activity when Plaintiff failed to offer evidence showing retaliatory motive or that the employer's reasons for termination were pretextual).

It is unclear from the Complaint whether Plaintiff believes that his emailed grievances to American Airlines' management or his formal EEOC charge were the relevant protected activities, and Plaintiff fails to identify whether Defendants' investigation, Plaintiff's termination, or both constitute an impermissible adverse employment action. Like his discrimination claim, Plaintiff never alleges facts indicating that his termination was a result of protected activity. Plaintiff broadly claims that his "unlawful termination was strategically, premeditatedly, conspiratorially and deceptively schemed" by Defendants, and this termination "correlated with the deceitful, evil and false misconduct charge" against Plaintiff. (Compl. at 7.) Even if both the first and second elements of a *prima facie* retaliation claim are satisfied by Plaintiff's convoluted allegations, his retaliation claim must also establish causation between any protected activities and retaliatory conduct.

According to the Complaint and Plaintiff's EEOC charge, all events relevant to his retaliation claim occurred in January 2023 through April 2023, when Plaintiff's employment was terminated. In January, Plaintiff emailed his workplace complaints regarding Defendants' recruitment practices to American Airlines' management team, had an argument with a gate agent, attended the first investigatory meeting with management,

1  and refused to attend the second follow-up investigatory meeting with management. He
2  was suspended in February until terminated in April. (Compl. at 5.) Amid this smattering
3  of workplace drama, Plaintiff engaged in protected conduct when he emailed his grievances
4  to management and filed an EEOC charge. Next, Plaintiff "merely has to prove that the
5  protected activity and the [adverse] action are not completely unrelated." *Ollier v.*
6  *Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 869 (9th Cir. 2014) (quoting *Emeldi v.*
7  *Univ. of Or.*, 698 F.3d 715, 726 (9th Cir. 2012)). The existence of protected activity and an
8  adverse employment action occurring close in time may provide an inference of retaliation.
9  *Ray*, 217 F.3d at 1244 (adverse employment actions "implemented close on the heels" of
10 a plaintiff's protected activities may be sufficient to establish causation if the plaintiff
11 shows a causal link.); *Spina v. Maricopa Cnty. Dep't of Transp.*, No. CV050712PHX, 2010
12 WL 457507, at *11 (D. Ariz. Feb. 5, 2010) ("[T]he Court must look not only to timing but
13 to all of the circumstances to determine whether an inference of causation is possible.").
14 Taking the Complaint as true, the circumstantial evidence provided by Plaintiff is adequate
15 to survive dismissal.

16      Although Plaintiff's wandering, unnumbered Complaint is difficult to parse, he has
17 nonetheless alleged sufficient plausible facts to support a *prima facie* cause of action for
18 retaliation. Plaintiff alleges that he engaged in protected conduct when he complained to
19 American Airlines' management and filed a charge with the EEOC; Plaintiff experienced
20 adverse employment action through the investigatory meetings and later termination; and
21 this adverse employment action occurred with temporal proximity to Plaintiff's protected
22 activity. These allegations, taken as true, are adequate to allow Plaintiff's retaliation claim
23 to proceed, and Plaintiff's termination falls within the applicable administrative limitations
24 period. Defendants will have an opportunity to prove that there was a legitimate,
25 nonretaliatory basis for Plaintiff's termination at summary judgment.

26      **D.     Individual Defendants**

27      In addition to American Airlines, Plaintiff sues various American Airlines
28 executives and employees in their personal capacities. Defendants properly argue that Title

VII does not permit an employee to sue supervisors or fellow employees in their individual capacities. *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1179 (9th Cir. 2003) ("We have consistently held that Title VII does not provide a cause of action for damages against supervisors or fellow employees.").[1] Accordingly, the Court dismisses the individually named Defendants from this case.

## IV.   Leave to Amend

If a defective complaint can be cured, the plaintiff is entitled to amend the complaint before her claims are dismissed with prejudice. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). "The power to grant leave to amend, however, is entrusted to the discretion of the district court, which 'determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009)). If Plaintiff can cure the defects described in this Order, Plaintiff may move the Court for leave to amend his Title VII discrimination claims. However, the Court warns Plaintiff to ensure any amended complaint refrains from conclusory factual allegations and descriptions of intended discovery questions, and to prepare the document according to the formatting parameters required by Rule 10. *See* Fed. R. Civ. P. 10. As originally written, Plaintiff's Complaint is unorganized and at times incoherent. Should Plaintiff choose to amend his Complaint, he must take care to ensure that any amended complaint presents a short and plain statement of allegations showing that the Plaintiff is plausibly entitled to relief. *See* Fed. R. Civ. P. 8; *Iqbal*, 556 U.S.at 678 (citing *Twombly*, 550 U.S. at 556). The defects in

---

[1] Defendants also note that, even if the individually named Defendants were permitted parties to this case and Plaintiff were seeking the proper injunctive relief, Plaintiff failed to properly serve them in accordance with Rule 4 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(e) (permitting individual service through personal delivery, leaving a copy of the summons at the individual's dwelling, or delivering a copy to an authorized agent). Despite Plaintiff's confusing statements and non-binding caselaw related to the "official" capacities of employee (Doc. 21 at 2), the individual defendants cannot be sued under Title VII, and Plaintiff has offered no arguments otherwise explaining how the individual Defendants could be appropriately included in this suit.

- 10 -

1  Plaintiff's claims against the individual Defendants cannot be cured by amendment, and
2  therefore the Court dismisses the individual defendants with prejudice.
3       **IT IS THEREFORE ORDERED** granting in part and denying in part Defendants'
4  Motion to Dismiss for Failure to State a Claim (Doc. 13). The claims for Discrimination
5  under Title VII are dismissed without prejudice. The individual Defendants are dismissed
6  with prejudice. Defendants' Motion is denied as to the claim of Retaliation.
7       **IT IS FURTHER ORDERED** that Plaintiff shall have until **December 12, 2024**
8  to move for leave to amend and lodge a proposed First Amended Complaint.
9       Dated this 25th day of November, 2024.

                    Honorable John J. Tuchi
                    United States District Judge